UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL NO. 3:02 CR 5 (JBA) |
| STEVEN CHEN, | : |
|     Defendant. | : October 2, 2006 |

### DEFENDANT STEVEN CHEN'S MEMORANDUM CONCERNING RESENTENCING PURSUANT TO *CROSBY*

    This is a remand pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), in order to permit the Court to consider whether to resentence Mr. Chen, now that the Supreme Court has instructed that the federal sentencing guidelines are not mandatory, United States v. Booker, 543 U.S. 220 (2005), and that the Court's sentencing determinations should take into consideration each of the factors described in 18 U.S.C. § 3553(a).[1]

    After trial and an extensive sentencing hearing, the Court determined that Mr. Chen's offense level was 25; that his criminal history category was I; and that his sentencing guideline range was 57 to 71 months. The Court declined to depart downwardly on the basis that the lack of real violence in the case took it out of the heartland of extortion cases; on the basis that Mr. Chen's family responsibilities were extraordinary; on the basis that Mr. Chen's inability to speak English would make his incarceration harsher and lonelier than the imprisonment of a native speaker of English; and on the basis of a combination of all these factors. The Court, however, sentenced Mr. Chen at the bottom of the guideline range, to 57 months. Although Mr. Chen appealed his conviction (and the judgment was affirmed), he did not appeal any aspect of his sentencing.

    As Judge Newman wrote in Crosby, "[p]rior to Booker/Fanfan, the section 3553(a) requirement that the sentencing judge 'consider' all of the factors enumerated in that section had

---

[1] It appears from telephonic consultations and the assistance of the prosecutor that Mr. Chen has completed the service of his sentence, that he has been surrendered to immigration authorities, that an order of removal was entered on September 25, and that he is currently awaiting execution of the order. We do not believe this matter to be moot, however. The length of the sentence imposed has important ramifications. The length of a prior sentence is of great importance in calculating a defendant's criminal history points under the sentencing guidelines. The length of Mr. Chen's sentence may have some persuasive power with respect to any discretionary powers that immigration authorities may still enjoy with respect to those convicted of aggravated felonies.

an uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance." While the Guidelines have not been discarded, the Guidelines are now one factor, among the other factors set forth in § 3553(a), that a sentencing court must consider.

Among the factors that the sentencing statute instructs the Court to consider are:

***(1) the nature and circumstances of the offense and the history and characteristics of the defendant.***

***(a) the nature and circumstances of the offense***: Under the sentencing guidelines, the seriousness of the offense is measured quantitatively, by adding points assigned to a series of objective factors. Booker allows the Court to take a less rigid (and more penetrating) view of the nature and circumstances of the offense.

Mr. Chen was a gambler and began by borrowing money from one of the claimed victims of the offense. The interest rates he charged were exorbitant, but he appears to have been particularly unsuccessful at actually collecting the loans that he made. When Inguan Teoh did not want to pay, he called the police (just as he seems to have done with respect to an earlier high-rate lender). The tale of Chen Shen Hsu, who borrowed large sums from Mr. Chen and did not repay them, flew to Taiwan to borrow from unsuspecting parents, then lost his parents' loan in Las Vegas on his way back to New York, makes one wonder who is worst: the lender, the borrower who gambles the loan away and does not repay it, or the casinos that profit from all this.

Despite all the boasting and braggadocio, the bottom line in this case is that there was no restaurant burned, no sinister connection to the New York Police Department, no bone broken, no punch thrown, not even a small bruise suffered.

***(b) the history and characteristics of the defendant:*** While the Guidelines severely limit the Court's consideration of the history and characteristics of a defendant, see, e.g., U.S.S.G. § 5H1.12 (limiting court's consideration of disadvantaged upbringing), the statute

3

instructs the Court to take the defendant's history and character into consideration. <u>Booker</u> allows the Court to fulfill Bob Dylan's (paraphrased) "wish that for just one time you[r Honor] could stand inside [the defendant's] shoes."[2]

      Mr. Chen arrived in the United States determined to get ahead in this land of opportunity after a difficult life in China. He was a gambler: the casinos lured him with the ever-present promise of riches without having to work twelve hours a day as a busboy in the hopes that his children might win scholarships to top universities. As Hesiod wrote, "Never dare to taunt a man with deadly poverty, which eats out the heart."[3] He went on to provide loans to fellow gamblers addicted to the same dream, gamblers who, unlike better established casino patrons, had no credit cards to provide advances. While his videotaped boasting was particularly unattractive, his tears at sentencing -- the weeping of a crushed and disconsolate man -- presented a truer picture of Steven Chen than his videotaped images.

      ***(2) the need for the sentence imposed to reflect the seriousness of the offense, to provide adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with correctional treatment in the most effective manner.*** This, perhaps, is the major factor in Mr. Chen's favor. While alienage is not a ground for downward departure under the sentencing guidelines, the fact that Mr. Chen will almost surely be deported after his service of the sentence indicates that even a short sentence would fulfill this statutory purpose. Mr. Chen has been convicted of an aggravated felony: his forced departure to China -- which, though developing, is still, for the vast majority of its non-urban citizens, a desperately poor place to live -- certainly reflects the seriousness of the offense and is likely to deter others similarly situated. The public need not be protected from him: the American public will be protected by Mr. Chen's being on the other side of the world, and as for the Chinese public, there are no casinos within which to act as a loan-shark in Jiangsu. As for correctional treatment, certain prison programs are not available to aliens, and it does seem to be

---

[2] A paraphrase of a line in "Positively Fourth Street."

[3] *Works and Days*, 1.717 (c. 800 B.C.)

J E R E M I A H  D O N O V A N ● ATTORNEY AT LAW ● P.O. BOX 554 ● OLD SAYBROOK CT 06475 ● (860) 388-3750 ● FAX 388-3181

4

a waste of United States resources to attempt to reform those who will be released to a life so foreign as to be beyond the power of American rehabilitators to foresee.

*(3) the kinds of sentences available.* As noted above, certain recommendations that the trial court might well decide to make to the Bureau of Prisons in order to fashion an effective sentence will be unavailable in this case. The looming deportation suggests that the Court fashion an appropriate sentence with that likelihood in mind.

*(4)-(5) Consideration of the applicable Sentencing Guidelines and the Sentencing Commission's policy statements.* These consideration, of course, guided the Court's initial sentencing.

*(6) The need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct.* Section 3553(a)(6) provides that sentencing judges are to consider "the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." If both were sentenced in accordance with the sentencing guidelines, Mr. Chen would serve considerably more time than would a United States citizen who had committed similar misconduct. Citizen defendants are eligible for the drug treatment program which may reduce their sentence by up to a year; they are eligible to be released to halfway houses roughly six months before the end of incarceration. While the in-prison portion of the drug treatment program is available to aliens, that portion of the drug treatment program that allows for early supervised release into the community is not available to aliens, nor is release to a halfway house. In addition, because he is eligible for deportation, Mr. Chen will probably be housed throughout the course of his incarceration in a facility more secure than that in which a similarly situated United States citizen would be held. While considerable appellate precedent has rejected this factor as a grounds for downward departure, the factor has gained added importance in light of the requirement of the sentencing guidelines that similarly situated defendants be treated similarly .

*(7) the need to provide restitution to any victims of the offense.* This factor does not seem to be applicable. In fact, the alleged victims seem to owe Mr. Chen money.

## CONCLUSION

5

For the above-stated reasons, we respectfully request that the Court reconsider the sentence imposed on Mr. Chen, resentence him, and reduce his sentence.

Respectfully submitted,

JEREMIAH DONOVAN
123 Elm Street--Unit 400
P.O. Box 554
Old Saybrook, CT 06475
(860) 388-3750
FAX 388-3181
Juris no. 305346
Fed.bar.no. CT 03536

CERTIFICATION OF SERVICE

This is to certify that the above and foregoing was mailed, postage prepaid, by first class mail, on Mr. Steven Reynolds, Assistant United States Attorney, United States Attorney's Office, Federal Building and Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, on this October 2, 2006.

_____
JEREMIAH DONOVAN