```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

United States of America       :
                               :
v.                             :       Case No. 3:02cr5 (JBA)
                               :
Steven Chen                    :
```

**RULING ON CROSBY REMAND ON DEFENDANT'S REQUEST FOR RESENTENCING
[DOCS. ## 117, 122]**

This case is now before the Court on the Second Circuit's order remanding this case for further proceedings in conformity with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), see Mandate [Doc. # 117] at 2, and defendant's request for resentencing, see Def. Mem. [Doc. # 122].  Defendant was sentenced to 57 months' imprisonment followed by a three-year period of supervised release, the latter to be imposed only if the defendant was not deported following release from prison, see Sent. Tr. [Doc. # 106] at 102-04, after being convicted following a jury trial of one count of conspiracy to collect and attempt to collect extensions of credit by extortionate means and two counts of collecting and attempting to collect extensions of credit by extortionate means, in violation of 18 U.S.C. § 894(a).  See Judgment [Doc. # 84].  For the reasons that follow, defendant's request for resentencing will be denied because the Court concludes it would not have imposed a different sentence if it had sentenced Chen in light of the Supreme Court's ruling in United States v. Booker.  See Crosby, 397 F.3d at 118 (holding

1

that resentencing is not required if the court concludes "the sentence would have been essentially the same as originally imposed").[1]

I. **Crosby Standard**

Chen did not challenge the application of the Sentencing Guidelines to his case at his sentencing hearing, and therefore, as the parties agree, this remand is governed by Crosby. As interpreted in Crosby, the Booker decision rendered the Sentencing Guidelines advisory, to be considered by the sentencing court alone with the other factors in 18 U.S.C. § 3553(a)[2] in arriving at an appropriate sentence. Crosby, 397

---

[1] Although Chen has completed his sentence, he contends that this matter is not moot because "[t]he length of the sentence imposed has important ramifications [and] is of great importance in calculating a defendant's criminal history points under the sentencing guidelines," e.g., "[t]he length of Mr. Chen's sentence may have some persuasive power with respect to any discretionary powers that immigration authorities may still enjoy with respect to those convicted of aggravated felonies." Def. Mem. [Doc. # 122] at 1 n.1. The Court observes that the Second Circuit has cast doubt on Chen's contention by finding moot appeals of individuals who have been deported and who have "only a quixotic chance of legally returning to the United States," see United States v. Williams, -- F.3d --, 2007 WL 241296, at *7 n.6 (2d Cir. Jan. 30, 2007), but because the defendants in the cases referenced in Williams had been convicted of controlled substance offenses and were thus inadmissible to the United States, and given that defendant here suggests that his admissibility may depend on the "discretionary powers" of immigration authorities, which may include consideration of the length of defendant's sentence, the Court will consider defendant's resentencing request.

[2] "...The court, in determining the particular sentence to be imposed, shall consider--
(1) the nature and circumstances of the offense and the history

2

F.3d at 111-12. The Second Circuit declined to define "what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range," preferring "to permit the concept of 'consideration' . . . to evolve as district judges faithfully perform their statutory duties." Id. at 113. As the Second Circuit recently explained, "[c]onsideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2d

---

and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)  to afford adequate deterrence to criminal conduct;
    (C)  to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission. . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

Cir. 2006); accord Williams, 2007 WL 241296, at *6.  Thus under the new sentencing regime the proper procedure is for the sentencing court first to calculate the applicable Guidelines sentence, including any departures warranted by the Guidelines, and then decide, based on all the factors in § 3553(a), whether to sentence within the Guidelines range or impose a non-Guidelines sentence.  Crosby, 397 F.3d at 111-13.  This standard now governs sentences imposed post-Crosby.

For those cases pending on direct appeal before Booker, the Second Circuit held that the appropriate disposition would "be a remand to the district court, not for the purpose of a required resentencing but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence."  Id. at 117 (emphasis in original).  The sentencing court is to base its decision concerning whether to resentence "on the circumstances at the time of the original sentence. . . ."  Id. at 120.

**II.  Chen's Offense and Sentence**

As revealed by the evidence at trial, the jury's verdict, the presentence report, and the transcript of the sentencing hearing, Chen's conviction was based on his conspiracy and participation in a scheme operated out of the Foxwoods Casino in Connecticut involving use of extortionate means to collect and

attempt to collect outstanding loans from victims (including Inguan Teoh and Chen Shen Hsu) and punishing those victim debtors by threatening to use violence or other criminal means to harm them.  At trial the jury saw, inter alia, videotapes of Chen and his alleged co-conspirator Gong Chai Sun admitting to being involved in a loan-sharking operation and discussing the maintenance of records, the collection process, and their claim that they would use police to collect debts.  The jury also heard the testimony of victims Teoh and Hsu, who admitted that they received loans during the relevant time period and testified concerning the threats and fear they experienced from defendant and co-defendant Sun in the collection of those loans.  As noted above, on August 30, 2002, the jury convicted Chen on all three counts charged in the Indictment: one count of conspiracy and two substantive counts related to Chen's actions towards Teoh and Hsu.

At sentencing, the Court sentenced Chen to 57 months' imprisonment and a three-year period of supervised release, which sentence was calculated pursuant to the Sentencing Guidelines on the basis of a base offense level of 22, a three-level enhancement for Chen's role in the offense, and a criminal history category of I.  These factors resulted in a sentencing range of 57 to 71 months and the Court, while declining to grant defendant's requested downward departure based on lack of

evidence of actual violence, family responsibility, and harsh conditions in prison for a non-English speaker, considered these facts in sentencing Chen at the bottom of the applicable Guidelines range.  Sent. Tr. at 100-02.

**III. Chen's Arguments for Resentencing**

Under Crosby, the Court first must calculate the applicable Guidelines range before determining whether that range yields an appropriate sentence.  On considering Chen's post-remand resentencing request, the Court adheres to its prior decision that a three-level enhancement for Chen's role in the offenses of conviction was appropriate, and that Chen is not eligible for any downward departure under the Guidelines.  At the sentencing hearing the Court heard argument on the nature of Chen's role in the criminal enterprise and whether Chen's offense level should thus be increased by four levels pursuant to U.S.S.G. § 3B1.1(a), and queried counsel as to whether the evidence "support[ed] a manager/supervisor" enhancement instead pursuant to § 3B1.1(b), with which analysis Chen agreed (through counsel).  See Sent. Tr. 52-53 ("Judge, I think I'm not going to argue with you about that.  I think that may be right.").  The Court determined that a three-level role enhancement was appropriate (noting, "counsel has properly conceded as much"), but declined to award the fourth point due to insufficient evidence that Chen was a leader/organizer.  Id. at 98-100.

6

Next, while Chen argued at the sentencing hearing that he was entitled to a departure due to a lack of evidence of actual violence inflicted, taking his conviction outside the heartland of cases contemplated by the Sentencing Commission for such crimes, this argument is not persuasive because the offense itself does not require evidence of actual violence.  The evidence at trial, including testimony of victims, established that there were credible threats of violence, which the Court found brought defendant's conduct within the heartland of the Sentencing Guidelines.  As to defendant's claim of family responsibility, the Court acknowledged "the incredibly sad reality that a defendant's crimes often hurt the people he loves the most," but found that, particularly where the presentence report and sentencing proceedings showed that the mother of Mr. Chen's son "works two jobs, barely supports the child, but does so thus far," defendant's "ties and responsibilities, while very real, are not extraordinary and would be the situation of anyone facing incarceration and ultimately deportation.  Difficult, yes; extraordinary, no."  Id. at 100-01.  As to defendant's last ground for a downward departure, harsh conditions in prison due to defendant's inability to speak English, while the Court acknowledged "that the loneliness and the inability to fully understand what the daily life's requirements are will be difficult," "it d[id] not seem to [the Court] that this is a

situation other than that which is faced by a non-English speaking deportable alien," and thus was not a situation "of a kind or degree that was not adequately considered by the sentencing commission warranting a departure." Id. at 101.

Accordingly, the applicable Guidelines range was, as properly calculated by the Court at sentencing, 57-71 months, given a base offense level of 22, a three-level role enhancement, and a criminal history category I. The Court sentenced Chen at the bottom of the sentencing range, to 57 months' imprisonment, to reflect the factors urged in defendant's request for downward departure.

Turning now to the factors of § 3553(a), the Court determines that consideration of these factors does not persuade the Court that it would have sentenced Chen differently if it had sentenced him in light of Booker.

§ 3553(a)(1): this subsection concerns the nature and circumstances of the offense and the history and characteristics of the defendant. Defendant reiterates his downward departure arguments concerning the lack of evidence of any actual violence, and argues that the Court should take into consideration that Chen was a gambler and that "[w]hile his videotaped boasting was particularly unattractive, his tears at sentencing . . . presented a truer picture of Steven Chen." Def. Mem. at 3. While the Court acknowledges, as it did at sentencing, the lack

of evidence of any actual violence, the conduct for which Mr. Chen was convicted was nevertheless serious and included threats of violence against multiple victims.  Moreover, while Chen may have been a gambler "determined to get ahead in this land of opportunity after a difficult life in China . . . without having to work twelve hours a day as a busboy in the hopes that his children might win scholarships to top universities," id., crimes such as these are often committed by individuals who suffer the same addiction as do their victims, but that fact makes the conduct no less criminal, and the individual no less culpable.

§ 3553(a)(2): this subsection mandates consideration of "the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  While defendant argues that in light of the fact that he will "almost surely" be deported after the service of his prison sentence, a short sentence would serve the statutory purpose, as the American public will be protected by him being deported to China as much as they will by his imprisonment, the Court concludes that other factors in § 3553(a)(2) – to reflect the seriousness of the

9

offense, to provide just punishment, and to afford adequate deterrence – counsel in favor of a more substantial sentence.

§ 3553(a)(3): this subsection involves consideration of the kinds of sentences available. Defendant observes that "certain recommendations that the trial court might well decide to make to the Bureau of Prisons in order to fashion an effective sentence will be unavailable in this case," due to defendant's alien status, and "[t]he looming deportation suggests that the Court fashion an appropriate sentence with that likelihood in mind." Def. Mem. at 4. The Second Circuit has recently held, however, that it is improper for district courts "to factor deportation in as an 'additional punishment'" when sentencing a defendant. See United States v. Wills, -- F.3d --, 2007 WL 366071, at *3 (2d Cir. Feb. 5, 2007).

§ 3553(a)(4) and (5): as defendant notes, these subsections concern the consideration of the applicable Sentencing Guidelines and the Sentencing Commission's policy statements, which guided the Court's initial sentencing (as outlined above).

§ 3553(a)(6): this subsection mandates consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Chen argues that "[i]f both were sentenced in accordance with the sentencing guidelines, Mr. Chen would serve considerably more time than would a United States citizen who had

10

committed similar misconduct," as citizen defendants may be eligible for drug treatment programs which may reduce their sentences, and for release into halfway houses. Def. Mem. at 4. The Court, however, considered related concerns at sentencing, i.e., defendant's inability to speak English and the resultant harsher prison experience, and found that the situation was no different than that faced by any non-English speaking deportable alien. The same analysis applies here. Cf. United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006) ("[W]e will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants."). Moreover, the Court considered the relationship between Chen's conduct and that of his co-defendant, Sun, and determined the disparity in their sentences appropriately corresponded to their differing conduct.

§ 3553(a)(7): this subsection relates to the need for victim restitution which, as defendant acknowledges, is not applicable.

### Summary

Thus, having considered the Guidelines analysis, as well as the § 3553(a) factors, the Court concludes that it would not impose a different sentence on Chen if it were to resentence him.

**IV. Conclusion**

For the foregoing reasons, defendant's request for

11

resentencing [Doc. # 41] is DENIED.

                                        IT IS SO ORDERED.

                                        /s/
                               Janet Bond Arterton
                               United States District Judge

**Dated at New Haven, Connecticut this 15th day of February, 2007.**